873 F.2d 1249
 10 Employee Benefits Ca 2642
 Anne CANTRELL, an individual and as administratrix of the
Estate of Jennifer Cantrell, Plaintiff-Appellant,
v.
GREAT REPUBLIC INSURANCE COMPANY and Great Republic Life
Insurance Company, Defendants-Appellees.
 No. 88-6025.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 3, 1989.
Decided April 24, 1989.
 
 Raphael Metzger, Seal Beach, Cal., for plaintiff-appellant.
 John Chakmak (argued), and Charles L. Zetterberg, on brief of Buxbaum & Chakmak, Newport, Cal., for Great Republic Ins. Co.
 Roger A. Ginsburg, Claremont, Cal., for Great Republic Life Ins. Co.
 Appeal from the United States District Court for the Central District of California.
 Before SNEED, FARRIS and PREGERSON, Circuit Judges.
 PREGERSON, Circuit Judge:
 
 I. BACKGROUND
 
 1
 On October 8, 1985, appellant Anne Cantrell filed an action in state court for wrongful rescission of an insurance contract. She alleged that defendant Great Republic Insurance Company (GRIC), a California corporation, had breached the implied covenant of good faith and fair dealing and wrongfully denied the existence of a contract when it rescinded the policy she had obtained in 1981. The complaint charged that GRIC had rescinded Cantrell's insurance policy in bad faith to avoid paying the medical expenses arising from illnesses suffered by Cantrell's husband and daughter. Clerk's Record (C.R.) 1, Exhibit No. A-83.
 
 
 2
 Cantrell's complaint alleged that in June of 1981, Cantrell was interviewed at her place of employment by an agent of GRIC for the purpose of determining her eligibility for health insurance with GRIC. Cantrell obtained an insurance policy from GRIC which was to become effective August 1, 1981. The policy covered Cantrell, her husband, and her son. GRIC's representative told Cantrell that the child she was then pregnant with would be added to the policy as a dependent upon birth.
 
 
 3
 On August 27, 1981, Cantrell's husband was admitted to a hospital suffering from acute myocardial infarction. On October 14, 1981, Cantrell's recently-born daughter was hospitalized and subsequently diagnosed as suffering from cystic fibrosis. (Cantrell's daughter died from cystic fibrosis on May 9, 1987 at the age of five.)
 
 
 4
 During the fall of 1981, Cantrell submitted claims to GRIC for the medical expenses incurred as the result of her husband's and daughter's illnesses. On December 24, 1981, GRIC rescinded Cantrell's insurance policy, citing "unadmitted medical history."
 
 
 5
 Although Cantrell named GRIC as the defendant in her complaint, the complaint was answered by Great Republic Life Insurance Company (GRLIC), a Washington corporation, in January of 1986. C.R. 1, Exhibit No. A-73.[1] GRLIC also cross-complained against Cantrell,[2] alleging breach of the duty of good faith and fair dealing.[3] C.R. 1, Exhibit No. A-49.
 
 
 6
 On May 9, 1986, Cantrell propounded a request for admission to GRIC. C.R. 9, Exhibit A. Request for Admission Number four stated:
 
 
 7
 On or about August 1, 1981, Great Republic issued a certificate of insurance, number 01-036-04407-1 for group medical expense insurance coverage to plaintiff.
 
 
 8
 Id. at 2.
 
 
 9
 On June 13, 1986, GRLIC responded to Request for Admission Number four as follows:
 
 
 10
 Objection: Great Republic objects to this request for admission on the ground said request is vague, ambiguous, and unintelligible. Great Republic further objects to this request for admission on the ground that said request is compound in nature, making a response by this Defendant impossible. However, in the interest of good faith discovery, but without in any way waiving the above-stated objections, Great Republic offers the following response to Plaintiff's Request for Admission No. 4:
 
 
 11
 Great Republic admits that on or about August 1, 1981, certificate of insurance no. 01-036-04407-1 was issued with coverage for Plaintiff. Except as specifically admitted, Great Republic denies Request for admission No. 4.
 
 
 12
 C.R. 9, Exhibit B at 2.
 
 
 13
 On September 18, 1987, counsel for Cantrell mailed to counsel for GRIC (which was, at that stage in the litigation, apparently also counsel for GRLIC) a copy of a proposed First Amended Complaint. The First Amended Complaint amended Cantrell's original complaint to add GRLIC as a defendant and to add as a plaintiff Cantrell in her capacity as administrator of the estate of her daughter. C.R. 9, Exhibit C; C.R. 1, Exhibit No. A-17. After counsel for appellees declined to stipulate to the filing of the First Amended Complaint, Cantrell filed a motion for leave to file the First Amended Complaint, which was granted on October 21, 1987.
 
 
 14
 On November 20, 1987, GRIC and GRLIC jointly removed the state court action to federal district court. C.R. 1. Appellees argued in their petition for removal that the action was one over which the district court had original jurisdiction under the Employee Retirement Income Security Act of 1974 ("ERISA"), and that removal was therefore justified under the removal statute, 28 U.S.C. section 1446(b). They also asserted that the removal was timely because of the addition of new parties in the First Amended Complaint. C.R. 1.
 
 
 15
 On December 18, 1987, Cantrell filed a motion to remand the action to state court, a motion to strike an affidavit offered by appellees in support of their removal petition, and a motion for expenses incurred by Cantrell in opposing appellees' allegedly wrongful removal of the action. The district court denied these motions on March 1, 1988. C.R. 17.
 
 
 16
 On April 21, 1988, the district court granted appellees' motion to dismiss the action, holding that dismissal was required under Fed.R.Civ.P. 12(b)(6) because Cantrell's action was time-barred under the terms of the rescinded insurance contract. C.R. 20.
 
 
 17
 Cantrell brought this appeal, which was timely filed. C.R. 22.
 
 II. STANDARDS OF REVIEW
 
 18
 This court reviews de novo a district court's denial of a motion to remand. See Lewis v. Time, Inc., 710 F.2d 549, 551-52 (9th Cir.1983).
 
 
 19
 A dismissal under Fed.R.Civ.P. 12(b)(6) is subject to de novo review. See Kelson v. City of Springfield, 767 F.2d 651, 653 (9th Cir.1985).
 
 III. DISCUSSION
 A. The Remand Motion
 
 20
 1. Cantrell's Complaint "Arises Under" Federal Law
 
 
 21
 In her motion to remand the action to state court, Cantrell argued that the case had been removed improvidently and without jurisdiction because, first, the action was not one "arising under" federal law within the meaning of 28 U.S.C. section 1331. C.R. 9 at 5. According to Cantrell, neither the original nor the amended complaint provided any indication that Cantrell had asserted a claim created by federal law. The "well-pleaded complaint rule," according to Cantrell, therefore precluded the district court from asserting jurisdiction because a federal question did not appear on the face of Cantrell's complaint. Id. at 6 (citing Franchise Tax Board v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983)).
 
 
 22
 The district court rejected this argument, pointing out that " '[a] suit may ... be removed where the real nature of the claim asserted in the complaint is federal....' " C.R. 17 at 2 (citing IA Moore's Federal Practice p 0.160). The court also noted that state causes of action for improper handling of employee benefits are preempted by ERISA and subject to removal, even if "artfully pleaded." Id. (citing Clorox v. United States District Court, 779 F.2d 517, 521 (9th Cir.1985)). The court went on to find that the insurance policy in question was part of an ERISA plan. Id. The court therefore concluded that Cantrell's complaint was founded upon federal law and hence was properly removed. Id.
 
 
 23
 The district court's conclusion on this issue was correct. The insurance policy issued to appellee was part of an ERISA plan.[4] See, e.g., C.R. 12, Exhibit No. A-68 ("Heritage Plan" brochure referring to ERISA requirements). For this reason, removal was appropriate. In Clorox v. United States District Court, the case relied on by the district court, this court held that although the plaintiff asserted only state law claims, her action was removable because ERISA creates a federal cause of action over claims by an employee "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 779 F.2d at 521 (citing 29 U.S.C. Sec. 1132(a)(1)). The plaintiff in Clorox had alleged that her employer wrongfully and maliciously denied her employment benefits. This court concluded that plaintiff's "artful pleading" of her complaint in terms of state law could not avoid federal jurisdiction over her complaint. Id.
 
 
 24
 Even if Clorox is not directly applicable to the present case,[5] other authority supports the district court's conclusion that the action was removable due to ERISA. In Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), the Supreme Court held that ERISA preempted an employee's state common law action against his insurer for alleged improper processing of his claim for benefits under an ERISA plan. In Pilot Life, the plaintiff had purchased a group insurance policy from Pilot Life. The plaintiff was subsequently injured and received benefits from Pilot Life for two years, after which Pilot Life terminated his benefits. The plaintiff brought an action against Pilot Life in federal court, alleging tortious breach of contract, breach of fiduciary duties, and fraud in the inducement. The plaintiff sought damages "for failure to provide benefits under the insurance policy...." Id., 107 S.Ct. at 1551. He did not assert any cause of action under ERISA. Id.
 
 
 25
 Pilot Life moved for summary judgment, arguing that ERISA preempted the insured's common law claim for failure to pay benefits on the group insurance policy. The Supreme Court agreed.
 
 
 26
 The Court first observed that, under ERISA, if a state law "relate[s] to" employee benefit plans, it is preempted by ERISA. Id. at 1552 (citing Sec. 514(a)). Under ERISA's saving clause, however, there is no federal preemption of laws that "regulat[e] insurance." Id. (citing Sec. 514(b)(2)(A)). A state law "relate[s] to" a benefit plan, the Court noted, "if it has a connection with or reference to such a plan." Id. at 1553. Moreover, ERISA's preemption clause, section 514(a), is not limited to state laws specifically designed to affect employee benefit plans. Id.[6] The Court concluded that the plaintiff's common law causes of action, each based on alleged improper processing of a claim for benefits under an employee benefit plan, met the criteria for preemption under section 514(a). Id.
 
 
 27
 Finally, the Court held that the plaintiff's common law causes of action did not fall under ERISA's "saving clause" because his "tortious breach of contract claim"--also described by the Court as a "bad faith" claim[7]--was not based on a state law which "regulate[s] insurance." Id. at 1553-54.
 
 
 28
 Cantrell's claims in the present case are indistinguishable from the "bad faith" claim which the Supreme Court in Pilot Life held to be preempted by ERISA. Despite Cantrell's effort to avoid characterizing her action as one for alleged improper processing of her claims for benefits under an ERISA plan and thus falling within the scope of federal preemption mandated by Pilot Life, Cantrell in fact is complaining that rather than processing her claims pursuant to their obligation under the policy, appellees rescinded the policy in bad faith to avoid paying for Cantrell's medical expenses. The difference between Pilot Life's termination of plaintiff's benefits in Pilot Life and appellees' rescission of Cantrell's policy in the present case is difficult to discern.
 
 
 29
 Moreover, in Pilot Life the Supreme Court held that the civil enforcement provisions of ERISA section 502(a) are the exclusive vehicle for actions by ERISA-plan participants who assert improper processing of a claim for benefits. Id. at 1555.[8] As the Court pointed out, under section 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits. Id. at 1556. Cantrell has not argued that she could not obtain relief for the alleged wrongful rescission of her insurance policy under the civil enforcement provisions of section 502(a), and there is no obvious reason to think that she could not.[9]
 
 
 30
 Because ERISA preempts Cantrell's state law causes of action, Cantrell's action was removable to federal court. See Clorox v. United States District Court, 779 F.2d 517, 521 (9th Cir.1985). See also Pilot Life, 107 S.Ct. at 1557 (all civil actions brought to recover benefits due under an ERISA plan "are to be regarded as arising under the laws of the United States....") (quoting H.R.Conf.Rep. No. 93-1280, p. 327 (1974), U.S.Code Cong. & Admin.News 1974, pp. 4639, 5107) (emphasis added by the Supreme Court); id. (Congress intended "that all suits brought by beneficiaries or participants asserting improper processing of claims under ERISA-regulated plans be treated as federal questions governed by Sec. 502(a)."). Cantrell's action is removable because it "arises under" federal law.
 
 2. Appellees' Removal Was Untimely
 
 31
 Although the district court correctly determined that the action was removable under ERISA, it erred in holding that appellees had timely removed the action. Given the argument made above, supra III-A-1, it is clear that Cantrell's original complaint was removable. Cantrell filed her original complaint on October 8, 1985; appellees did not remove the action until November 20, 1987, far beyond the thirty-day limitation on removal contained in 28 U.S.C. section 1446(b), infra. Appellees in their brief offer several arguments designed to show why their removal was in fact timely. As discussed below, however, appellees' arguments on this issue lack merit.
 
 
 32
 The time requirements for filing a petition for removal are set forth in 28 U.S.C. section 1446(b), which provides:
 
 
 33
 The petition for removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on defendant, whichever period is shorter.
 
 
 34
 If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.
 
 
 35
 28 U.S.C. Sec. 1446(b).
 
 
 36
 Cantrell filed her original complaint, naming GRIC as defendant and herself as plaintiff, on October 8, 1985. Appellees removed the case on November 20, 1987. Thus the removal could only be justified, if at all, under the second paragraph of section 1446(b). Appellees indeed invoked this paragraph in their petition for removal, asserting that the change in parties effected by Cantrell's amended complaint, filed October 21, 1987, "render[ed] a [previously] nonremovable case removable" under section 1446(b). C.R. 1 at 3. However, appellees have failed to explain why the original complaint had not been removable.
 
 
 37
 In her motion for remand, Cantrell argued that the amended complaint was identical to the original complaint except for its addition of Cantrell as a plaintiff in her representative capacity and its addition of GRLIC as a defendant.[10] Thus, argued Cantrell, if the amended complaint was removable, so was the original complaint. C.R. 9 at 13. Appellees' failure to remove the action within thirty days of the filing of the original complaint therefore constituted waiver of appellees' right to remove. Id.
 
 
 38
 The district court rejected this argument. After summarizing section 1446(b), the court stated:
 
 
 39
 Plaintiff filed an amended complaint adding defendant Great Republic Life on October 21, 1987. The defendants filed their removal petition on November 20, 1987. Defendant Great Republic Life filed the petition for removal within thirty days after it was added to the instant action. Therefore, the Court finds that the removal was timely.
 
 
 40
 C.R. 17 at 3-4. Thus the district court did not directly address the question of whether the action was removable after the filing of Cantrell's original complaint. Nor did the court consider the fact that GRLIC had acted as a "party" to the action long before the filing of the amended complaint, by answering and cross-complaining in response to Cantrell's original complaint and by responding to Cantrell's Requests for Admission. See supra Part I.
 
 
 41
 Appellees now urge this court to affirm the district court on the ground that removal was timely because, first, appellees did not have notice until October 22, 1987 (the day they received notification that the first amended complaint had been filed) that they were being sued by Cantrell in her representative capacity and, second, because GRLIC did not have notice that it was being sued at all until October 22, 1987. Because appellees removed the action within thirty days of October 22, 1987, they argue, their removal was timely under 28 U.S.C. section 1446(b).
 
 
 42
 However, neither the addition of Cantrell as a plaintiff in her representative capacity nor the addition of GRLIC as a defendant makes the amended complaint "an amended pleading ... from which it first may be ascertained that the case is one which is or has become removable." 28 U.S.C. Sec. 1446(b) (emphasis added). There is nothing about the addition of a party plaintiff or defendant in the context of this action that either creates federal jurisdiction or makes the fact of federal jurisdiction newly ascertainable. First, appellees do not (and could not) contend that the addition of either party created diversity jurisdiction. Second, the addition of the parties did not affect the presence or ascertainability of federal question jurisdiction. Indeed, appellees (and the district court) do not attempt to argue that the addition of either party created or newly demonstrated the presence of a federal question in this case. Appellees merely assert that "[a] change of parties may make an action removable, even though that action has been pending for a period of time." Appellees' Brief at 11. This assertion does not however demonstrate that the change of parties had any such effect in this case.
 
 
 43
 Appellees cite two cases in support of their assertion that the change in parties rendered the action removable; both are distinguishable. Appellees rely on Bussey v. Seaboard Coast Line Railroad Co., 319 F.Supp. 281 (S.D.Ga.1970), for the proposition that a change in parties may make non-diversity actions removable. In Bussey, the plaintiff filed a complaint mistakenly naming a non-existent corporation as defendant. Upon learning of his error, the plaintiff amended his complaint to name the proper defendant, Seaboard. Seaboard then removed the action within thirty days of being named but after thirty days from the filing of the original complaint. The court held that the removal was timely. In the present case, however, the originally-named defendant, GRIC, was a proper party defendant; at the least, no party has yet argued that GRIC is a non-existent or fictitious corporation.
 
 
 44
 Appellees also rely on Federal Deposit Insurance Corporation v. Otero, 598 F.2d 627 (1st Cir.1979), for the proposition that a change in parties may justify removal. Otero, however, is also inapposite. In Otero, the court observed that "when the plaintiff by a voluntary act interposes a federal question that did not appear in the complaint as originally filed, the defendant may remove the action to federal court." Id. at 629. The court then held that the intervention by the FDIC as a party plaintiff in the case constituted such a voluntary act. Id. The intervention of the FDIC interposed a federal question and thus created federal "arising under" jurisdiction because "the involvement of a federal agency may put in issue the federal laws governing its rights and liabilities as a creditor." Id. In the present case, by contrast, appellees have failed to argue, much less demonstrate, that the addition of either GRLIC as a defendant or Cantrell in her representative capacity as a plaintiff "interpose[d] a federal question that did not appear in the complaint as originally filed." Id.
 
 
 45
 Finally, it should be noted that appellees have not argued that Cantrell's failure to allege explicitly any causes of action arising under ERISA in her original complaint caused appellees' failure to remove the action within thirty days of the filing of the original complaint.[11] Nor would it be fair to let appellees "have it both ways," i.e., to permit them to remove the action on the basis of ERISA preemption but excuse them from compliance with the thirty-day removal period, at least in the absence of evidence that appellees were ignorant of the presence of an ERISA component in the action prior to the filing of the amended complaint.
 
 
 46
 In conclusion, then, Cantrell's original complaint gave both of the appellees notice of the federal question raised by Cantrell's complaint and gave them notice that they were both exposed to liability. GRLIC's active participation in the litigation, including its filing of an answer and a cross-complaint in response to Cantrell's original complaint, precludes it from arguing that the time for removal began to run as to GRLIC only from the time of its formal addition as a defendant in Cantrell's amended complaint. Accordingly, appellees lost their opportunity to remove the case when they failed to file a petition for removal within thirty days of the filing of the original complaint. See Clorox, 779 F.2d at 521 ("it is possible to waive the right to remove from state court...."). We therefore reverse the district court's denial of Cantrell's remand motion, and order the case remanded to state court.
 
 B. The Motion for Expenses
 
 47
 Under 28 U.S.C. section 1447(c), a district court must remand any case that has been removed "improvidently and without jurisdiction." Section 1447(c) provides in part:
 
 
 48
 If at any time before final judgment it appears that the case was removed improvidently and without jurisdiction, the district court shall remand, the case, and may order the payment of just costs....
 
 
 49
 28 U.S.C. Sec. 1447(c).
 
 
 50
 The district court denied Cantrell's motion for expenses arising from appellees' removal of the action because the court held that the action was properly removed. C.R. 17. Because we conclude that the district court erred in holding that the removal was timely, we direct the district court to reconsider its decision to deny Cantrell the "payment of just costs."
 
 C. The 12(b)(6) Motion
 
 51
 The district court granted appellees' Rule 12(b)(6) motion to dismiss the case after finding that the rescinded insurance policy required Cantrell to bring an action within three years from the date the cause of action arose. C.R. 20.[12] The court held that the policy's limitation provision, which limited the time to sue to a period shorter than California's otherwise applicable statute of limitations, was valid because it was clearly stated in the policy, and provided a period within which to sue which was not so short as to be unreasonable. C.R. 20 at 2 (citing C & H Foods v. Hartford Insurance Company, 163 Cal.App.3d 1055, 1064, 211 Cal.Rptr. 765, 769-70 (1984)).
 
 
 52
 The district court found that Cantrell's cause of action arose on December 24, 1981, when her policy was rescinded by appellees. Id. at 2-3. Cantrell filed her original complaint on October 8, 1985. The court concluded that "based on the provision in the insurance plan, limiting the time to bring an action to three years, [Cantrell] did not timely file her action." Id. at 3. The court therefore dismissed the action with prejudice. Id.[13]
 
 
 53
 Cantrell argues that the district court erred in dismissing the action.
 
 
 54
 Because we conclude that the case should have been remanded to state court, we reverse the district court's order dismissing the case under Rule 12(b)(6). The district court lacked jurisdiction to enter such an order. Thus we do not reach the merits of the Rule 12(b)(6) dismissal.
 
 
 55
 REVERSED and REMANDED.
 
 
 
 [1]
 The caption of Cantrell's complaint listed GRIC and Does 1 through 20 as defendants. In its Answer GRLIC altered the caption so that GRLIC and Does 1 through 20 appeared as defendants
 
 
 [2]
 The caption of GRLIC's cross-complaint listed both GRLIC and GRIC, together with the Does, as defendants
 
 
 [3]
 GRIC and GRLIC (hereinafter, collectively, "appellees") assert in their brief that only GRIC answered and cross-complained in response to Cantrell's complaint. Appellees' Brief at 2. The answer and cross-complaint however unambiguously state that they were filed on behalf of GRLIC. The answer, for example, is entitled "Answer of Defendant Great Republic Life Insurance Company to Complaint." C.R. 1, Exhibit No. A-73 at 1. The cross-complaint, similarly, begins: "Cross-complainant GREAT REPUBLIC LIFE INSURANCE COMPANY ... alleges...." C.R. 1, Exhibit No. A-49 at 1. The fact that GRLIC answered and cross-complained is relevant to the issue, discussed below, of whether GRLIC had notice of the action for purposes of the time limitation on removal. See infra Part III A 2
 
 
 [4]
 Cantrell nowhere denies that her policy was part of an ERISA plan. Rather, she argues that appellees are estopped from asserting that it was an ERISA plan because of their response to her Request for Admission No. 4, supra Part I, because they rescinded the policy, and because they failed to assert ERISA preemption in their answer to the original complaint
 
 
 [5]
 Clorox concerned an action by an employee against her employer for improper handling of employee benefits. Here, by contrast, a plan participant is suing her insurer
 
 
 [6]
 The Court also observed that, for purposes of Sec. 514, the term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. 107 S.Ct. at 1553 n. 1 (quoting 29 U.S.C. Sec. 1144(c)(1) and (2))
 
 
 [7]
 The Court pointed out that of his three original claims against the insurer, plaintiff argued before the Supreme Court only that the bad faith claim was protected from the preemptive effect of section 514(a). 107 S.Ct. at 1553
 
 
 [8]
 Section 502(a), as set forth in 29 U.S.C. Sec. 1132(a), provides in part:
 A civil action may be brought--
 (1) by a participant or beneficiary--
 (A) for the relief provided for in subsection (c) of this section [concerning requests to the administrator for information], or
 (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;
 (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title [breach of fiduciary duty];
 (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan....
 
 
 [9]
 The closest Cantrell comes to arguing that she could not recover under ERISA is her assertion that Great Republic treated her policy as an insurance contract rather than an ERISA policy, most importantly when it rescinded the policy. According to Cantrell, there is no statutory authority for an ERISA fiduciary or plan administrator to rescind a certificate issued to an individual member of an ERISA plan. Appellant's Brief at 28. ERISA only provides for the termination of plans. Id. (citing 29 U.S.C. Sec. 1341). Therefore, Cantrell implies, her policy was not part of an ERISA plan and she would be precluded from recovering under ERISA's civil enforcement provisions. Id. However, even if Cantrell's brief can be construed as presenting such an argument, it must fail, because Cantrell has not presented sufficient evidence to serve as the basis for reversing the district court's finding that the policy was in fact part of an ERISA plan, C.R. 17 at 2, or to explain why ERISA's civil enforcement provisions are not available to her
 
 
 [10]
 Appellees do not contest this characterization of the two complaints
 
 
 [11]
 To the contrary, appellees assert, in another context, that no "discovery" is needed in this case to reveal the "true [i.e. "ERISA"] nature of [Cantrell's] claim." Appellees' Brief at 16. In support of this assertion appellees point to a declaration by Anne Van Belkom which they attached to their opposition to Cantrell's motion to remand. According to appellees, this declaration states that Cantrell's insurance policy was part of "an ERISA plan." Id. (citing C.R. 12, Exhibit B). Thus appellees concede that they were aware that the action was really an ERISA case at the outset of the litigation
 
 
 [12]
 The relevant policy provision stated:
 No action at law or in equity may be brought to recover on the Master Policy before 60 days after sufficient proof of loss has been furnished the Company nor after 3 years from the expiration of the time allowed for furnishing proof of loss.
 C.R. 1, Exhibit No. A-67 ("Heritage Plan"). The policy also stated that the insured "must give the Company written notice of a claim within 20 days after the occurrence or commencement of any loss covered by the plan, or as soon thereafter as is reasonably possible." Id.
 
 
 [13]
 The district court also imposed costs of $1017.00 against Cantrell. C.R. 20 at 3